The Honorable Susan Wagle State Senator, 30th District 4 N. Sagebrush Wichita, Kansas 67230
Dear Senator Wagle:
As state senator for the 30th district, you pose the following question:
 "Would the direct application of a teeth whitening or bleaching product (i.e., carbamide peroxide) to the teeth by a non-licensed person, not under the direct supervision of a licensed dentist, be considered either the practice of dentistry or dental hygiene under the Dental Practice Act?"
Over the past recent years teeth whitening has become increasingly popular among consumers. We learn from a dental insurance company:
 "A child's baby teeth are generally whiter than the adult teeth that follow. Over time, adult teeth often darken due to changes in the mineral structure of the tooth. Tobacco use or drinking coffee, tea and other beverages can cause darkening, and certain medications can discolor teeth. These factors lead many adults to consider teeth bleaching to restore their once brilliant smiles."[1]
The American Dental Association explains that:
 "`Whitening' is any process that will make teeth appear whiter. This can be achieved in two ways. A product can bleach the tooth, which means that it actually changes the natural tooth color. Bleaching products contain peroxide(s) that help remove deep (intrinsic) and surface (extrinsic) stains. By contrast, non-bleaching products contain agents that work by physical or chemical action to help remove surface stains only.
 . . . .
 "There are many professionally applied tooth whitening bleach products. These products use hydrogen peroxide in concentrations ranging from 15 percent to 35 percent and are sometimes used together with a light or laser, which the companies state accelerate or activate the whitening process. Prior to application of professional products, gum tissues are isolated either with a rubber dam or a protective gel. Whereas home-use products are intended for use over a two-to-four week period, the professional procedure is usually completed in about an hour.
 "As with the 10 percent home-use carbamide peroxide bleach products, the most commonly observed side effects of professionally applied hydrogen peroxide products are temporary tooth sensitivity and occasional irritation of oral tissues. On rare occasions, irreversible tooth damage has been reported. . . ."[2]
We are informed by the Kansas Dental Association that "[m]any non-dental businesses advertise that they apply whitening agents directly to consumers' teeth. . . . These whitening products include the direct application of professional levels of carbamide peroxide as well as whiteners that are applied to the teeth and then activated by a light source delivered at specific wavelengths."[3]
In Kansas it is unlawful for a person to practice dentistry unless licensed as a dentist or a dental hygienist, or practicing under the direct supervision of a dentist.[4] Practicing dentistry in violation of this statute is a misdemeanor, carrying a penalty of a maximum $1000 fine, 12 month imprisonment, or both. Additionally, the Board of Dentistry may seek an injunction against any person the Board believes is practicing dentistry or dental hygiene in violation of the Regulation of Dentists and Dental Hygienists Act (Act).[5]
The practice of dentistry statutorily consists of providing a number of specific services,[6] as well as generally performing a "dental service of any kind"[7] and treating a "physical condition of the human teeth."[8] These latter categories of services are quite broad and conceivably could implicate almost anything considered "dental" or having to do with "human teeth," including a person brushing her own teeth. Avoiding such an absurd result, former Attorney General Carla J. Stovall opined that a strict literal interpretation would not serve the legislative purpose of protecting the public from the incompetent provision of dental services.[9] Attorney General Stovall thus concluded that the sale by unlicensed persons of impression materials for teeth whitening did not constitute the practice of dentistry and that the sale of whitening toothpaste or whitening gel did not constitute the treatment of a physical condition of human teeth.[10]
As with the practice of dentistry, the practice of dental hygiene is also statutorily defined and includes "therapeutic procedures which result in the removal of extraneous deposits, stains, and debris from the teeth."[11]
Your question goes beyond the one addressed in Attorney General Opinion No. 2000-7, to whether a person not licensed as a dentist or hygienist, or under direct supervision of a dentist, may lawfullyapply whitening products to a consumer's teeth.
The difficulty in resolving this issue lies in the attempt to construe the statutory phrases "dental service of any kind," treatment of a "physical condition of the human teeth" and "removal of . . . stains" in order to determine what is included in and what is excluded from the practice of dentistry and dental hygiene.
The Kansas Dental Board,[12] the Kansas Dental Association[13] and the Kansas Dental Hygienists Association[14] believe that teeth whitening procedures should be included in the statutory phrases that define the practice of dentistry and the practice of dental hygiene. We agree that application of teeth whitening products could be included in the statutory phrases "dental service of any kind," treatment of a "physical condition of the human teeth" as used in the definition of the practice of dentistry, and "removal of . . . stains" as used in the definition of the practice of dental hygiene. The Kansas Dental Board has authority to adopt a regulation stating that teeth whitening is a "dental service" to treat a "physical condition of the human teeth,"and/or is a dental hygiene service to remove stains.[15]
However, in the absence of such regulatory specificity, an attempt to initiate either a criminal prosecution or an injunction may be subject to a due process challenge for vagueness.[16] Therefore, should the Kansas Dental Board require the application of teeth whitening or bleaching products be performed only by licensed dentists, dental hygienists or persons under the direct supervision of a licensed dentist, the Board should adopt an appropriate regulation.
Sincerely,
 Stephen N. Six Attorney General
 Camille Nohe Assistant Attorney General
SNS:MF:CN:jm
[1] http://www.deltadental.com/Public/OralHealth/bleachingrisks.jsp (Tooth Whitening: Know the Risks)
[2] http://www.ada.org/prof/resources/positions/statements/whiten2.asp (ADA Statements on the Safety and Effectiveness of Tooth Whitening Products)
[3] Letter from Kansas Dental Association, April 2, 2008.
[4] K.S.A. 65-1421; 65-1423(8) and (9).
[5] K.S.A. 65-1451.
[6] K.S.A. 65-1422.
[7] K.S.A. 65-1422(a).
[8] K.S.A. 65-1422(f).
[9] Citing Winslow v. Homer, 115 Kan. 450,451 (1924) (practice of dentistry involves public health and is regulated to protect public from ignorance, unskillfulness, unscrupulousness, deception, and fraud);State v. Creditor 44 Kan. 565, 567 (1890) (practice of dentistry licensed to aid in exclusion of those unfit to practice due to lack of experience, learning and skill).
[10] Attorney General Opinion No. 2000-7.
[11] K.S.A. 2007 Supp. 65-1456 (emphasis added).
[12] April 21, 2008 letter from Betty Wright, Executive Director, Kansas Dental Board.
[13] April 2, 2008 letter from Kevin Robertson, Executive Director, Kansas Dental Association.
[14] March 28, 2008 letter from Susan Rodgers, Kansas Dental Hygienists Association.
[15] K.S.A. 74-1407 (Dental Board has power to adopt regulations to carry out and make effective provisions of act).
[16] Even assuming the statutes regulating the practice of dentistry may be understood as statutes regulating a business, if a statute could subject a person to both criminal and administrative actions, the criminal standard for determining vagueness applies. Boatright v. KansasRacing Commission, 251 Kan 240, 243, citing Kansas City Millwright Co.,Inc. v. Kalb, 221 Kan. 658, 662-63 (1977). The criminal standard requires a determination of whether the statute's "language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process." 251 Kan. at 243, quotingHearn v. City of Overland Park, 244 Kan. 638, 642 (1989).