BALL *v.* HAIL.

4-5148

Opinion delivered July 4, 1938.

*J. J. McCaleb,* for appellants.

*J. Paul Ward* and *S. M. Casey,* for appellees.

BAKER, J. J. C. Hail and S. M. Casey filed separate suits in the circuit court against Ball and Rider. Each was seeking to recover damages for injuries suffered in an automobile accident. Each sued for $300, alleging that his automobile had been impaired to that extent, and each

recovered a verdict for $275, and consequent judgments were rendered on the said verdicts. The cases were consolidated for trial only.

Appellants' contentions are: "1st. There is no evidence of negligence on the part of appellant Ball upon which to base a verdict or judgment against either appellant. 2nd. The evidence is uncontradicted that, while appellant Ball was employed by and driving a car belonging to Rider Motor Company, he was not, at the time of the accident, on any business whatever for the Rider Motor Company, but, having finished his work for the day at Rider Motor Company, was simply going home to spend the night, which was his own purely private and personal business, in no remote manner connected with his employment. For this reason no verdict or judgment should have been rendered against the Rider Motor Company."

It will be observed from the foregoing that there is no controversy about the sufficiency of the pleadings, nor about the instructions given, nor the amount recovered. The question is one of liability. For a short statement of the case we quote from appellants' brief: "Mr. Ball lived several miles north of Batesville, and on the night of April 17, 1937, having finished his work for the day at the Rider Motor Company's place of business, and while on his way home for the night, driving a car belonging to Rider Motor Company, the accident occurred out of which this litigation arises.

"Appellee Hail had parked his car along the curb and appellee Casey had parked immediately behind him. The car driven by appellant Ball struck the Casey car and pushed it into the Hail car. The uncontradicted evidence shows that the Casey car was without parking lights, and Ball testified that this fact made it harder for him to see it in time to avoid striking it."

The appellee Hail testified in this case, and, without quoting from his testimony, it may be stated that the effect of his evidence was that he had parked on the right-hand side of the street next to the curb headed north. The Casey car was headed the same way, but ten or fifteen feet behind the Hail car. Hail testified he talked to

Ball after the accident and Ball said he hit the car. Hail asked how it happened. Ball answered: "Well, someone was down the street there and had turned his lights on"; that he understood him to say that it "kind of" blinded him, and he said, "I guess it was my fault. This other car turned the lights on down the street headed in the other direction."

Upon proper objection the court at this time ruled or announced that this statement of Ball's did not bind Rider or the Rider Motor Company, the name under which Rider operated.

Ball admitted that he had driven his car into the back end of the Casey car. Mr. Rider came up a short time thereafter and said that he was awful sorry it happened, that it was his car or the Rider Motor Company's car, and that Mr. Ball had been down there at the Rider Motor Company place of business at a meeting they were having there that night; that he had called a meeting of the salesmen that night at his place and that Mr. Ball had been to the meeting and was on his way home; that he had been down there on their business. Mr. Rider said that Mr. Ball was working for him as one of his salesmen, and they had a business meeting that night and he supposed Mr. Ball was on his way home; that it was the most direct route he would go home. The accident happened about 9:30 at night.

Rider's statements did not substantially vary from the statements made by Ball, except that Ball went into somewhat more detail showing that the meeting held at the Rider Motor Company was on Saturday night and that they usually stayed later Saturday night than on other nights; they had been busy and had a late meeting, and after the meeting was over he had started on his way home and was going to go to bed. Approaching the scene of the accident he was on a down grade and there was a car coming from the opposite direction which blinded him and the first thing he knew he had hit the car. He was endeavoring to pass another car coming from the north and lights "bleared" in his face and that he was somewhat blinded; that he didn't see any parking light on the Casey car, could have seen one if there had been

any there, and could have judged the distance better. He was driving twenty-five or thirty miles an hour and traffic on the street was pretty heavy. He was driving a 1934 Tudor Ford, lighter in weight than either the Casey or Hail car. Main street is straight there, but much narrower there than it is down town. He had good lights on his car. He did not see the Casey car or he would not have run into it.

Rider and Ball both insisted that the court should have given a directed verdict in their favor. The court refused to do this and submitted the case to the jury.

Appellants vigorously assail the judgment as not being supported by any substantial evidence. They argue most forcifully that the evidence which they have offered is undisputed and that there was no question of fact to be determined in fixing liability. The positive statements, repeated several times perhaps to give emphasis, is that Mr. Ball attended the meeting of the salesmen of the Rider Motor Company and that after the meeting adjourned late Saturday night, Mr. Ball's employment for the day, or duties thereof were ended and that it was after this closing of the day's business that the accident occurred and that on account of that alleged fact, which it is contended was undisputed, the Rider Motor Company bases its contention that it was not liable.

Counsel so urgently insists that under such circumstances liability was determined not according to the well-known principles of respondeat superior, but, erroneously, because Ball was operating a Rider car or automobile at the time of the accident. It is also argued that Ball himself was not liable because the Casey car was parked and had no parking lights burning or aglow at the time of the accident, and that Casey was negligent for having left the car without parking lights and consequently had no right to recover against Ball.

What may appear as unnecessary repetition in statements of proof is set out in order to encompass every theory of the defense.

If we should assume that appellants' conclusions as to the facts are correct, we might well agree with appellants with most of their contentions, but not all. We are

forced to decide appellants' conclusions are not arrived. at upon sound legal premises.

Under the circumstances above stated there are certain presumptions that enter into the consideration of the evidence. Mr. Ball and Mr. Rider are the sole or only witnesses testifying for appellants. They are interested parties, both defendants in suit and on that account their testimony will not be taken as undisputed. *Seeman* v. *Hilderbrand,* 185 Ark. 677, 113 S. W. 2d 724; *French* v. *Browning,* 187 Ark. 996, 63 S. W. 2d 647. On that account the jury might accept or refuse to believe this disputed testimony, or accept such portion of it as might be deemed proper.

There was also another presumption present in this case that arises out of Mr. Ball's employment by Mr. Rider and the fact that he was driving or operating Mr. Rider's car at the time of the accident. That presumption is that the servant was acting for the master while he was operating the master's car. That is a mere presumption. It may be overcome by evidence. The only denial, however, of the presumption is the evidence of Mr. Ball and of Mr. Rider and that evidence is disputed by their interests stated above.

This statement in regard to presumptions is sustained by numerous authorities, some of the more recent of which follow: *Mullins* v. *Ritchie Grocer Co.,* 183 Ark. 218, 35 S. W. 2d 1010; *Terry Dairy Co.* v. *Parker,* 144 Ark. 401, 223 S. W. 6; *Rex Oil Corporation* v. *Crank,* 183 Ark. 819, 38 S. W. 2d 1093.

From the foregoing the only conclusion that can be reached is that the facts are not clear and undisputed as argued.

In addition to the foregoing conclusions we have reached, we find ourselves unable to agree with the appellants to the effect that when Mr. Ball was dismissed from the salesroom conference on Saturday night his employment for the day had ended. Both appellee and appellants urged that upon Mr. Ball's dismissal, after the meeting, he went a direct route to his home and appellants argue that this is evidence of the most positive character that he was free and outside of the scope of his

employment from and after the moment of the adjournment of the meeting. We would probably have agreed with this conclusion more readily if instead of going home he had gone fishing or to a picnic or barbecue. Furthermore, we see little difference in a contention that he was discharged and acting outside the scope of his employment, because he started home, than we would if the accident occurred in the early morning when he was driving from his home to the place of his employment. It might as sanely be argued that on such an early morning trip he had not yet engaged in the duties of the day and was, therefore, not acting for the master. These different conclusions that may be arrived at, one as well supported in reason as the other, raise questions to be determined by the jury and may not be determined as matters of law.

A recent case decided by this court, in which the accident occurred after working hours, as the servant was driving the master's truck to the servant's home, the truck being used sometimes on occasions to enable the servant to get to his home after the usual working hours, and to return to his work in due time in the morning, it was held that the use of the truck under such conditions and circumstances might properly have been determined as for the benefit of the master. *Helena Wholesale Gro. Co.* v. *Bell,* 195 Ark. 435, 112 S. W. 2d 416.

Besides these matters appellants urge that Ball was not negligent in driving the automobile into the car parked on the street. We have come to expect to find cars parked upon the streets in both day and night time. One may not be heard to say that he did not see what was plain to be seen. *M. P. Rd. Co.* v. *Brewer,* 193 Ark. 754, 102 S. W. 2d 538.

The car parked upon the street was probably plainly in view from street lights, but street lights may not have been present. The appellant says that he had good lights upon the car he was driving. If so, he could not have driven head-on into a car without seeing it. We can think of no excuse for this act under the circumstances stated except inattention, and inattention is negligence.

We think the foregoing clearly demonstrates that appellants were in error in their insistence that their con-

duct should be determined as a matter of law upon an undisputed statement of facts. The court properly submitted the questions that arose under the evidence to the jury and the jury's verdict is final. It is supported by substantial evidence.

Judgment is affirmed.